■ In the Matter of the Estate of ELIAS LAND, Deceased. RACHEL LAND, Respondent; FELIX LAND et al., Appellants. [611 NYS2d 833] —Decree, Surrogate's Court, Kings County (Bernard Bloom, S.), entered on or about September 8, 1992, which, upon a directed verdict after a jury trial, admitted to probate an instrument purporting to be the last will and testament of the deceased, unanimously affirmed, without costs.

We note first that the purported will itself, dated July 30, 1990, states that decedent was deliberately making no bequests of any significance to the objectants, his two sons, because he believed that they had excluded him from their lives. Evidence at trial established that decedent had not communicated with one son for some twenty years, had had a

strained relationship with the other, and that his daughter, the proponent of the will and beneficiary of decedent's house, commercial property, and residuary estate, had resided with and cared for decedent in his final years after he had suffered a debilitating stroke in December 1989.

Both medical and nonmedical evidence at trial established that decedent had difficulty speaking after suffering the stroke, but eventually regained some conversational capacity. Although decedent apparently was better able to converse in Yiddish, there is no credible evidence that he could not communicate in English. Several witnesses established that decedent, although handicapped verbally as a result of the stroke, still got around, albeit often by wheelchair, carried on his business affairs, and did not appear to be mentally infirm.

The attorney who prepared the will in issue testified that decedent was cognizant, engaged in rational conversation, and acknowledged that he understood the terms of the will. During the conversation, decedent became emotional when discussing his sons, noting that he did not even know Zachary's son and that Felix was out for himself and tended to avoid decedent, and explained to the attorney that these were the reasons why he wanted to change his will. The attorney also described the apartment's physical appearance and address, as well as decedent himself, and decedent's acknowledgment and execution of the will when the witnesses were called in. The witnesses, one of whom knew decedent personally, gave testimony that was consistent with that of the attorney.

While it was irregular for decedent to initial, out of the attorney's presence, a subsequent change in a clause relating to the bequest of the house, under the circumstances it is clear what was intended, and the correction of this typographical error was not a sufficient basis to deny probate. We note that decedent bequeathed the house to his daughter in a prior 1982 will, propounded by objectants. There is no basis to disturb the Surrogate's conclusion that the decedent's initials were genuine.

We also find no basis to conclude that the person who signed the will was not decedent, that the execution of the will was the result of fraud, or that decedent did not have sufficient mental capacity to dispose formally of his assets or to have understood that he was executing his will. On the basis of the trial evidence, the Surrogate properly directed a verdict that the signature was genuine and that decedent did not lack the requisite mental capacity.

Since the narrow issue before the Surrogate concerned the authenticity of the signature and decedent's capacity to execute the will, it was not an abuse of discretion for the Surrogate to preclude the introduction of evidence offered by objectants purporting to establish that the proponent had been converting decedent's assets prior to his death.

Finally, with regard to the directed verdict on the issue of undue influence, we note that this probate proceeding has occasioned an acrimonious family battle, and that the will proponent is estranged from the remainder of her family and may have a difficult personality. Nevertheless, in view of testimony from other witnesses plausibly explaining decedent's motives for changing his will, as well as the credible evidence that decedent, although physically limited, was still of sound mind, we find no basis to disturb the Surrogate's finding that, as a matter of law, decedent's execution of this instrument was not procured by undue influence.

We have considered the objectants' remaining contentions and find them unpersuasive. Concur—Sullivan, J. P., Carro, Ellerin, Asch and Tom, JJ.